PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WRK RARITIES, LLC, | ) | |
| | ) | CASE NO. 4:13cv323 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES ATTORNEY | ) | |
| GENERAL, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Regarding ECF No. 3] |

Based upon the Motion for a Temporary Restraining Order ("TRO") and Preliminary

Injunction filed on April 10, 2013 by Plaintiff WRK Rarities, LLC ("Plaintiff") (ECF No. 3), the

Court held a telephone conference on April 10, 2013.  At the instruction of the Court, Defendants

filed a response (ECF No. 5) and Plaintiff replied (ECF No. 7).

**I.  Background**

On April 10, 2013, Plaintiff filed a motion to enjoin the government from holding a

public auction on the morning of April 11, 2013 wherein Plaintiff's assets will be auctioned.

ECF No. 3 at 5.  The items to be auctioned are assets that the government seized from Plaintiff

pursuant to a tax levy against Kimpel's Jewelry & Gifts, Inc. ("Kimpel's") under 26 U.S.C. §

6331.  ECF No. 3 at 5.  The levy is being executed against Plaintiff because the government

alleges that Plaintiff is the alter ego of Kimpel's.  ECF No. 3 at 5.  As of January 8, 2013, the

Government alleges that  Kimpel's owed with respect to such tax, penalty, and interest, a total

amount of $384,893.34, plus statutory additions. ECF No. 5 at 4.

The seized assets to include jewelry, gems, semi-precious gems, and precious gems;

(4:13cv791)

inventory; and other items of value.  ECF No. 5 at 3.  Some items include those owned by third

parties that Plaintiff offers for sale on a consignment basis.  The parties disagree as to the amount

the seized property is worth.  The Court notes that, pursuant to 26 U.S.C. § 7426(c), "the

assessment of tax upon which the lien of the United States is based shall be conclusively

presumed to be valid."  Therefore, the Court presumes the government's assessment (*i.e.* amount

levied) is valid.

Defendants obtained a Writ of Entry on January 8, 2013, and executed the writ on

January 9, 2013.  ECF No. 5 at 2-3.  The Internal Revenue Service (IRS) hand-delivered notice of

a Public Auction and Sale to Taxpayer on or about February 14, 2013, notifying Mr. Kimpel that

the items would be sold at public auction on April 11, 2013.  ECF No. 5 at 3.

## II.  Standard of Review

When considering a TRO pursuant to Federal Rule of Civil Procedure 65, courts consider

whether a plaintiff meets its burden in establishing the following four factors: 1) whether the

moving party has a strong or substantial likelihood of success on the merits; 2) whether the

moving party will suffer irreparable harm unless injunctive relief is granted; 3) whether the

requested relief will cause substantial harm to third parties; and 4) whether injunctive relief is in

the public interest.  *Northeast Ohio Coalition for Homeless and Service Employees Intern.*

*Union*, 467 F.3d 999 (6th Cir. 2006); *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

"These factors are not prerequisites but are factors that are to be balanced against each other."

*Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

(4:13cv791)

### III.  Discussion

The Crux of the matter is Plaintiff's belief that the levy has been improperly placed: the debt owed is Kimpel's Jewelry & Gifts, Inc.'s, not Plaintiff's.  For the reasons provided below, this allegation and the others made by Plaintiff are not sufficient to meet the burden established by the above four factors.  Specifically:

1.  Plaintiff claims that it has a strong or substantial likelihood of success on the merits, because it is not the alter-ego of Kimpel's, but instead is a legally separate entity.  ECF No. 3 at 7.  As such, Plaintiff argues, the levy against Plaintiff is improper.  ECF No. 3 at 5.  Defendants dispute the separateness of the two entities and state the following:

> the government's investigation demonstrates that WRK Rarities, LLC DBA Kimpel's Fine Diamonds is in fact the Nominee and/or Alter Ego and/or Fraudulent Conveyee of The Property of Kimpel's Jewelry & Gifts, Inc.  WRK Rarities and Kimpel's Jewelry & Gifts, Inc.:
>
> 1) engage in the same business;
> 2) maintain the same ownership;
> 3) operate at the same location;
> 4) operate with the same employees; and
> 5) maintain the same signage.
>
> Further, when the IRS was investigating Mr. Kimpel and Kimpel's Jewelry & Gift Inc. [f]or their unpaid taxes, William R. Kimpel opened a new bank account at Farmer's National Bank on October 28, 2010, three days after a Revenue Office interviewed him.  Kimpel opened the new account at the same bank wherein the account for Kimpel's Jewelry & Gift Inc. maintained its account.  The original account had been in existence since July of 2007.  The new account was titled WRK Rarities LLC DBA Kimpel's Fine Diamonds.  William R. Kimpel and a longtime employee, Cindy L. Leonard, were the signatories on both accounts.  A deposit into the account of WRK Rarities on December 30, 2010, was drawn on the Kimpel's Jewelry & Gift Inc. account.  Deposits into the Kimpel's Jewelry & Gift Inc. account began decreasing significantly after that time.  Comparatively, the deposits into the WRK Rarities account began increasing.  The merchant account for credit card deposits was transferred to the successor bank account of

(4:13cv791)

> WRK Rarities on or about January 7, 2011.  By the end of April, 2011, all of the automatic payments coming from the Kimpel's Jewelry & Gift Inc. account on a monthly basis were transferred to the WRK's account.
>
> The physical location of Kimpel's Jewelry & Gifts Inc. was 111 Columbiana Plaza, Columbiana, OH.  Their business telephone number was (330) 482-3881, and it remains the same.  An internet search for the business known as WRK Rarities LLC produces an identical business address.  An internet search for the business known as Kimpel's Fine Diamonds also identifies this business location and the telephone number for Kimpel's Jewelry & Gift Inc.

ECF No. 5 at 6-7.

The Court finds that Plaintiff has not met its burden that it his a strong likelihood of success on the merits of its claim.

2.  Plaintiff claims that failure to enter the TRO will cause it irreparable harm.  Plaintiff has not asserted that the property seized is irreplaceable.  Rather, the value of the property is of concern to Plaintiff.  Pursuant to 26 U.S.C. § 7426(b)(2),

> If the Court determines that such property has been wrongfully levied upon, the court may--
> (A) order the return of specific property if the United States is in possession of such property;
> (B) grant a judgment for the amount of money levied upon; or
> (C) if such property was sold, grant a judgment for an amount not exceeding the greater of-- (i) the amount received by the United States from the sale of such property, or (ii) the fair market value of such property immediately before the levy.

Thus, if the Court later determines that Plaintiff is not the alter ego of Kimpel's, it may grant a judgment for a monetary amount under 26 U.S.C. § 7426(b)(2)(C).  Moreover, in general, financial loss does not qualify as irreparable harm.  See *Performance Unlimited, Inc. v. Quester Publishers, Inc.*, 52 F.3d 1375, 1382 (6th Cir. 1995); *Brake Parts, Inc. v. Lewis*, 443 Fed. App'x. 27, 32 (6th Cir. 2011).  This tips the balance against Plaintiff.

4

(4:13cv791)

       Plaintiff also argues that its business will suffer irreparable harm because, if the sale goes through, it will not be able to continue its operations.  ECF No. 3 at 9.  Defendants dispute that Plaintiff has shown that the sale of the jewelry would cause it to go out of business.  ECF No. 5 at 8.  The Court notes that Plaintiff's assets were seized on January 8, 2013.  On or around February 14, 2013, Plaintiff was notified that the sale of its assets would occur on April 11, 2013.  ECF No. 5 at 3.  Despite Plaintiff knowing for roughly two months that the sale would occur on April 11, 2013, Plaintiff waited until the day before the sale to file the instant action and motion.  Plaintiff has not met its burden in showing how the sale will cause it to go out of business, and, in any event, the other considerations regarding irreparable harm do not weigh in favor of Plaintiff.

       3.  Plaintiff claims that the requested relief will cause no substantial harm to third parties, save "a brief delay in collection" on the part of the government.  ECF No. 3 at 10.  Defendants in turn estimate that it has spent $16,935.74 already in anticipation of the sale, and anticipates future costs if the sale is delayed at 10,025.74.  ECF No. 5 at 9-10.  These costs include travel and accommodations for six people; security; advertising, jewelry appraisal, mileage for local assisting employees and public notice.  ECF No. 5 at 9-10.  Importantly, Defendants assert that prospective bidders have come from out-of-town for the auction, and that the auctioneers reasonably believe that if a sale is delayed the bidders will not return due to the time and expense they have already incurred.  ECF No. 5 at 10.  Moreover, Defendants argue that it will take approximately 90 days to set another sale date, all at the expense of taxpayers and the government.  ECF No. 5 at 10.  Therefore, it cannot be said that the only harm to third parties is a

(4:13cv791)

brief delay in collection.  Accordingly, this factor therefore weighs against Plaintiff.

4.  Plaintiff claims the injunctive relief is in the public interest because it would protect legitimate restructuring of businesses and protect the treatment of legitimately formed LLCs as distinct legal entities.  The protection of businesses and LLCs are sufficiently protected by statutory authorization that entitles Plaintiff to recovery the amount should the lien upon it be determined improper.

## IV.  Conclusion

For the aforementioned reasons, the Court denies Plaintiff's Motion for Temporary Restraining Order (ECF No. 3).

The Court sets a preliminary injunction hearing for May 17, 2013, at 12:00 p.m., as well as the following briefing schedule: Plaintiff's opening brief no later than  April 29, 2013; Defendants' response no later than May 10, 2013; and Plaintiff's reply no later than   May 15, 2013.

The parties are reminded they are encouraged to talk to one another and attempt to resolve the dispute.  Minimally, the Court will expect the parties to enter into stipulations of fact and law whenever possible.

A transcript of the TRO hearing may be obtained by contacting Court Reporter Mary Uphold at 330-884-7424.

IT IS SO ORDERED.


  April 10, 2013                                    */s/ Benita Y. Pearson*
Date                                                Benita Y. Pearson
                                                    United States District Judge