PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WRK RARITIES, LLC, | ) | |
| | ) | CASE NO. 4:13cv791 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 70] |

Pending before the Court is a motion for summary judgment filed by the United States of America.  ECF No. 70.  The Court has been advised, having reviewed the record, including the parties' briefs and the applicable law.  For the reasons that follow, the Court grants the motion for summary judgment.

**I.  Factual and Procedural Background**

In 1957, William R. Kimpel's father and uncle founded Kimpel's Jewelry and Gifts ("KJG"), a jewelry store located at 111 Columbiana Plaza, Columbiana, Ohio.  ECF No. 69 ¶ 1 (Joint Stipulation of Undisputed Facts).  The two co-owned the company until 1979, when William R. Kimpel purchased his uncle's half of KJG.  Kimpel purchased his father's half in 1994.  ECF No. 69 ¶ 1.  From that point forward, Kimpel was the sole owner, president, and the person responsible for managing the day-to-day operations of KJG.  ECF No. 69 ¶ 1.

On October 15, 2005, KJG filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division.  ECF No. 69 ¶ 4.  The Internal Revenue Service filed a proof of claim for unpaid federal tax liabilities, including

(4:13cv791)

corporate income taxes and employment taxes.  ECF No. 69 ¶ 4.  The Court approved a plan of

reorganization on May 23, 2007.  ECF No. 69 ¶ 4.  The bankruptcy case was dismissed on

August 23, 2010 because KJG had failed to make required payments under the bankruptcy plan.

ECF No. 69 ¶ 5.  Kimpel attributed KJG's failure to make payments on an investor wrongfully

taking KJG assets and two replevin actions in 2008, which resulted in KJG losing its inventory to

creditors and forced KJG to sell merchandise on consignment.  ECF No. 69 ¶¶ 6, 8.  Kimpel

admitted, however, to subsequently replenishing KJG's inventory through the profits obtained

from the consignment sales.  ECF No. 74-1 at PageID# 856.

KJG failed to pay its federal taxes while its bankruptcy case was pending.  ECF No. 69 ¶

9.  KJG ceased making quarterly deposits of federal employment taxes altogether in March 2007.

ECF No. 69 ¶ 9.  In response, a delegate of the Secretary of the Treasury made assessments

against KJG for unpaid employment taxes, penalties, and interest for all four quarters of 2007

and all four quarters of 2008, and the IRS filed notices of federal tax liens for those years as well.

ECF No. 69 ¶¶ 10–11.  An IRS Revenue Officer visited KJG in 2010 to interview KJG

employees and to speak with Kimpel.  ECF No. 69 ¶¶ 12–13.  Kimpel acknowledged his

responsibility for paying KJG's taxes, which had been unpaid for the past four years (2007

through 2010).  ECF No. 69 ¶¶ 13–14.  KJG allegedly ceased operations on December 31, 2010.

ECF No. 69 ¶ 15.

On or about September 1, 2010, Kimpel formed a new company, WRK Rarities, LLC

d/b/a Kimpel's Fine Diamonds ("WRK").  WRK owns and operates a jewelry store at 111

Columbiana Plaza, Columbiana, Ohio—the same address that KJG has been located since

1957—and has Kimpel as its sole owner, president, and manager of its day-to-day operations.

2

(4:13cv791)

ECF No. 69 ¶¶ 18–19.  WRK occupies the same space that KJG did, under identical terms for its lease, and has retained KJG's same signage, furniture, and fixtures.  ECF No. 69 ¶¶ 20–22. WRK continued to employ the same employees as KJG when the latter allegedly ceased operations on December 31, 2010.  ECF No. 69 ¶ 24.  These employees retained the same titles and salaries that they had from working for KJG.  ECF No. 69 ¶¶ 24, 28.  WRK continued KJG's business of jewelry, colored gems, loose diamonds, and watches, among other items, using some of the same suppliers and consignors as KJG.  ECF No. 69 ¶¶ 23, 25–26.  Kimpel also opened a new bank account in WRK's name at Farmer's National Bank—the same bank at which KJG had its operating bank account.  ECF No. 69 ¶¶ 2, 17.  Both Farmer's National Bank accounts had the same two authorized signatories: Kimpel and Cindy Leonard.  ECF No. 69 ¶¶ 2, 17.

In 2011, the IRS levied KJG's accounts, but recovered little or no proceeds because the accounts in KJG's name contained only minimal funds.  ECF No. 69 ¶ 34.  In September 2011, the IRS determined that WRK was the nominee, alter ego, and/or fraudulent conveyee of KJG, and proceeded to levy bank accounts in WRK's name to collect taxes owed by KJG.  ECF No. 69 ¶ 35.  WRK submitted to the IRS a proposal to have WRK purchase the assets of KJG for $2,236.00, and to provide that sum to the IRS in exchange for a discharge of all federal tax liens on KJG's property.  ECF No. 69 ¶ 36.  The IRS rejected that offer, however, because WRK's appraisal had been conducted without an in-person inspection, the proposal included no payment to KJG for inventory, goodwill, or other assets, and the amount offered was nominal compared to KJG's tax liabilities.  ECF No. 69 ¶ 37.  The IRS subsequently filed a Notice of Federal Tax Lien against WRK, as "nominee and/or alter ego and/or fraudulent conveyee" of KJG, with the Columbiana County Recorder.  ECF No. 69 ¶ 38.  The United States obtained a Writ of Entry on

(4:13cv791)

Premises to Effect Levy, permitting the IRS to enter WRK's premises for seizing assets which were subject to levy.  ECF No. 69 ¶ 39.  The IRS executed the Writ of Entry on January 20, 2013.  ECF No. 69 ¶ 40.

WRK, and former Plaintiffs Cindy Leonard and Barry Kimpel, initiated the instant lawsuit for wrongful levy on April 10, 2013.  ECF No. 1.  Plaintiffs moved for a temporary restraining order (ECF No. 3), but the Court denied the motion.  ECF No. 8.  Plaintiffs filed an amended complaint on May 30, 2013, alleging a single claim for wrongful levy.  ECF No. 17.  Plaintiffs Cindy Leonard and Barry Kimpel were voluntarily dismissed on November 4, 2013.  ECF No. 35.  WRK's counsel moved to withdraw on May 9, 2014, which the Court granted the same day.  ECF No. 54.  The United States moved for an order to show cause why the case should not be dismissed, on the grounds that WRK could not proceed *pro se* as a limited liability company.  ECF No. 57.  The case was dismissed without prejudice on November 26, 2014, subject to being reopened if WRK retained new counsel.  ECF No. 60.  WRK did so, and the case was reopened on March 11, 2015.  The United States of America moved for summary judgment on July 10, 2015.  ECF No. 70.  WRK opposed (ECF No. 75); the United States replied.  ECF No. 76.  The matter is ripe for adjudication.

## II.  Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the

4

(4:13cv791)

burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

(4:13cv791)

### III.  Analysis

WRK has brought a wrongful levy action against the United States of America, pursuant to 26 U.S.C. § 7426, which provides in relevant part:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1).  To prevail in a wrongful levy action, WRK must initially show that it was not the entity against whom the tax is assessed, has a legally cognizable interest in the property levied, and that the property must have been wrongfully levied upon.  *McGinness v. U.S., I.R.S.*, 90 F.3d 143, 145 (6th Cir. 1996).  "If the plaintiff makes that initial showing, the burden shifts to the government to establish, by substantial evidence, a 'nexus' or 'connection' between the taxpayer and the property levied upon."  *PBV, Inc. v. Rossotti*, 178 F.3d 1295 (6th Cir. 1999) (table).  WRK bears the ultimate burden of showing that the levy was wrongful.  *Id.*

The United States has moved for summary judgment on the grounds that WRK has not shown that the levy on its assets was wrongful.  The United States argues that, the IRS has the power to levy unpaid taxes on a successor corporation for the unpaid taxes of the predecessor corporation when the successor is merely the alter ego of the predecessor.  *Abercrombie & Fitch Stores Inc. v. Am. Commercial Const., Inc.*, 499 F. App'x 550, 555 (6th Cir. 2012) (recognizing the IRS's power "to levy taxpayers' unpaid taxes against their alter ego corporation").  According to the United States, WRK is the alter ego of KJG, and the levy against WRK is for KJG's unpaid taxes.  Therefore, the United States argues, the levy is not wrongful.

The parties dispute the applicable standard for determining whether WRK is KJG's alter

6

(4:13cv791)

ego for purposes of successor liability.  The United States argues that the Court should apply

federal common law, but argues in the alternative that the standard for showing successor

liability is met under Ohio law as well.  WRK argues that Ohio law should apply.[1]

Under Sixth Circuit precedent, "[a] federal tax lien does not arise or attach to property in

which a person has no interest under state law. . . . Once state law determines that a property

interest exists, federal law dictates the tax consequences."  *Spotts v. United States*, 429 F.3d 248,

251 (6th Cir. 2005) (citations omitted).  This includes "not only the property and rights to

property owned by the delinquent taxpayer, but also property held by a third party if it is

determined that the third party is holding the property as a nominee or alter ego of the delinquent

taxpayer."  *Id.*; *see also Drye v. United States*, 528 U.S. 49, 58 (1999) ("We look initially to state

law to determine what rights the taxpayer has in the property the Government seeks to reach, then

to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or

'rights to property' within the compass of the federal tax lien legislation."); *Morgan v. Comm'r

of Internal Revenue*, 309 U.S. 78, 80 (1940) ("State law creates legal interests and rights.  The

federal revenue acts designate what interests or rights, so created, shall be taxed.").  Both the

Supreme Court and the Sixth Circuit have cautioned against the application of federal common

law outside of circumstances of an actual conflict between the federal policy sought to be

protected by federal common law and the application of the state-law standard.  *Atherton v.*

_____

[1]  Specifically, WRK argues that the Court should apply the test for piercing the corporate
veil under Ohio law.  Although veil-piercing can establish a type of alter ego liability, the factors
considered bear no relevance on the instant case.  As the United States correctly argues in reply,
this case is not about whether the IRS can hold William R. Kimpel personally liable for some act
of WRK; it is about whether the IRS can hold WRK liable, as KJG's successor, for KJG's unpaid
taxes.

(4:13cv791)

*F.D.I.C.*, 519 U.S. 213, 218 (1997) ("Thus, normally, when courts decide to fashion rules of federal common law, the guiding principle is that a significant conflict between some federal policy or interest and the use of state law . . . must first be specifically shown. . . . Indeed, such a conflict is normally a precondition." (internal quotation marks and citations omitted)); *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 512 (6th Cir. 2005) (rejecting the argument that a conflict existed between "more encompassing" federal common law and Ohio's "mere continuation" test for successor liability in a patent judgment enforcement case; *Whelco Indus., Ltd. v. United States*, 526 F. Supp. 2d 819, 824–27 (N.D. Ohio 2007) (holding that Ohio law should apply for determining whether an entity is a successor for purposes of assessing federal tax obligations).  Accordingly, Ohio law on alter ego liability applies.

In Ohio, "[t]he well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation.  *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993) (citing *Flaugher v. Cone Automatic Machine Co.*, 507 N.E.2d 331 (Ohio 1987)).  Ohio has four exceptions to this rule, however, and a successor corporation may be held liable when (1) the buyer expressly or impliedly agrees to assume such liability, (2) the transaction amounts to a *de facto* consolidation or merger, (3) the buyer corporation is merely a continuation of the seller corporation, or (4) the transaction is entered into fraudulently for the purpose of escaping liability.  *Welco Indus., Inc.*, 617 N.E.2d at 1132 (citing *Flaugher*, 507 N.E.2d at 334).  In this case, the United States has demonstrated that WRK is merely a continuation of KJG.

The touchstone of the mere continuation doctrine is the continuation of the corporate entity, not the business operation, after the transaction.  As the Ohio Supreme Court described,

(4:13cv791)

these circumstances arise

> when one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation. This is actually a reorganization. This type of transaction is executed to escape liabilities of the predecessor corporation. Because the goal is to escape liability, inadequacy of consideration is one of the indicia of mere continuation.

*Welco Indus., Inc.*, 617 N.E.2d at 1134 (internal citations and quotation marks omitted).

Common ownership of the companies is critical to this analysis.  When the asset transfer occurs at arm's length between entities with different owners, successor liability is not established.  *E.g.*, *Aluminum Line Products Co. v. Brad Smith Roofing Co.*, 671 N.E.2d 1343, 1356 (Ohio Ct. App. 1996) ("There is no evidence to support the conclusion that SMI transformed into ERA as a result of the same people owning or operating both corporations."); *Kemper v. Saline Lectronics*, 366 F. Supp. 2d 550, 558 (N.D. Ohio 2005) (finding no mere continuation when fourteen individuals owned predecessor company and two owned successor company); *Howell v. Atl.-Meeco, Inc.*, No. 01CA0084, 2002 WL 857685, at *5 (Ohio Ct. App. Apr. 26, 2002) (finding no mere continuation when there was no evidence that the buyer and seller corporation were related in any way, of inadequate consideration, or an attempt to escape liability fraudulently); *Semirale v. Rhea*, No. 65906, 1994 WL 197219, at *3–4 (Ohio Ct. App. May 19, 1994) (finding no mere continuation because both corporations had entirely different ownerships).  Conversely, a finding of identical ownership supports a claim that a successor corporation is a mere continuation of the predecessor.  *E.g.*, *Per-Co, Ltd. v. Great Lakes Factors*, 299 F. App'x 559, 564 (6th Cir. 2008) (finding the mere continuation doctrine satisfied when the same two individuals owned both companies, and the transactions were not at arm's length and for

9

(4:13cv791)

inadequate consideration); *Pottschmidt v. Klosterman*, 865 N.E.2d 111, 120 (Ohio Ct. App. 2006) (finding mere continuation when both corporations were owned and operated by the same individual, had the same employees, were located in the same building, and served the same customers); *Mohammadpour v. Thomas*, 2005-Ohio-3853, ¶ 11– 15 (Ohio Ct. App. 2005) (finding mere continuation when assets were transferred "for no apparent consideration" and both corporations shared the same primarily shareholder).

In this case, it is undisputed that William R. Kimpel was the sole owner of both KJG and WRK.  ECF No. 69 ¶¶ 1, 18–19.  Kimpel averred that he was the sole shareholder of KJG, and that he is the sole member of WRK.  ECF No. 75-1 ¶¶ 3, 10.  Kimpel was the person responsible for managing both KJG and WRK's day-to-day operations.  ECF No. 69 ¶¶ 1, 18–19.  Kimpel even signed for both KJG and WRK when the latter attempted to satisfy KJG's outstanding tax liability by purchasing furniture from KJG.  ECF No. 69-17 at PageID# 652.  That the same person owned both KJG and WRK, satisfies *Welco*'s requirement of common ownership, demonstrating that one company is a mere continuation of the other.

In addition to this common ownership, the United States demonstrated inadequacy of consideration for any transfers of assets that have occurred between KJG and WRK.  The parties stipulated that WRK has retained the same physical space and lease as KJG.  ECF No. 69 ¶ 20.  Although WRK argues that KJG had no assets when it ceased to do business in 2010, the undisputed record shows that WRK retained and used KJG's furniture, fixtures, and computers.  ECF No. 69 ¶¶ 22, 28.  WRK attempted to satisfy KJG's outstanding tax liability by purchasing the assets of KJG, but the application was rejected by the United States because the application did not include an in-person inspection, the proposal included no payment to KJG for inventory,

(4:13cv791)

goodwill, or other assets, and the amount offered was nominal compared to KJG's tax liabilities.

ECF No. 69 ¶¶ 36–37. Aside from this attempt, there is no evidence of WRK offering KJG any

consideration, much less adequate consideration, for the assets that WRK acquired from KJG.

See *Mohammadpour*, 2005-Ohio-3853, ¶ 11 ("[T]he court found that IQC acquired Industrial's

assets "for no apparent consideration" and the principal shareholder, Thomas, remained the same

for both entities."); ECF No. 74-1 at PageID# 856 (deposition of William R. Kimpell, admitting

that KJG built up an inventory after the creditor replevin actions).

Finally, there is evidence that WRK was created to escape liability. Kimpel admitted that

he formed WRK for a "fresh start." ECF No. 75-1 ¶ 20. At the same time, WRK retained nearly

everything from KJG: WRK assumed KJG's address, building, management, employees,

furniture, business operations, and suppliers. The only thing that appears to have changed from

KJG to WRK is the corporate form. This is the type of "reorganization" that satisfies the mere

continuation test under Ohio law. *Welco Indus., Inc.*, 617 N.E.2d at 1134. The United States has

also presented evidence that Kimpel was moving money from KJG to WRK accounts while the

IRS began to file notices of federal tax liens against KJG . Kimpel opened a bank account in

WRK's name around the time that an IRS Revenue Officer met with Kimpel to discuss KJG's

outstanding tax liability. ECF No. 69 ¶¶ 13, 17. Two months later, KJG made a $7,400 deposit

into WRK's bank account. *Compare* ECF No. 69-5 at PageID# 449 (KJG bank account ledger

showing a debit of $7,400 on 12/30/2010), *with id.* at PageID# 452 (WRK bank account ledger

showing a deposit of $7,400 on 12/30/2010).

The undisputed facts support the United States' argument that WRK is merely a

continuation of KJG under *Welco*. As KJG's alter ego, WRK may be held liable for KJG's

11

(4:13cv791)

outstanding tax liability.  *Abercrombie & Fitch Stores Inc.*, 499 F. App'x at 555 ("[T]he federal

tax code permits the IRS to levy taxpayers' unpaid taxes against their alter ego corporation upon

the filing of a tax lien against them.").  Accordingly, the levy is not wrongful, and WRK will not

be able to prevail on its wrongful levy claim.

## IV.  Conclusion

For the forgoing reasons, the Court grants the United States' motion for summary

judgment.  ECF No. 70.


IT IS SO ORDERED.


  February 29, 2016                                 */s/ Benita Y. Pearson*
Date                                                 Benita Y. Pearson
                                                     United States District Judge